FILED
CHARLOTTE, N. C.
JUL 2 8 2005
U. S. DISTRICT COURT
W. DIST. OF N. C.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:05cr289-Mu

| | |
|---|---|
| UNITED STATES OF AMERICA ) | **BILL OF INFORMATION** |
| ) | |
| ) | Violation: |
| v. ) | 18 U.S.C. § 2319(a), (b)(1) |
| ) | 18 U.S.C. § 371 |
| ) | 18 U.S.C. § 2 |
| SCOTT J. WALLS ) | 17 U.S.C. § 506(a)(1) |

THE UNITED STATES ATTORNEY CHARGES:

### BACKGROUND

At all times relevant to this Information:

1.   During the 1990s, individuals skilled in cracking digital copyright protection systems organized themselves into national and international groups called "warez" groups after the term "soft*ware*." These groups are dedicated to intellectual property "piracy," that is, the unauthorized, illegal reproduction and distribution of copyrighted computer software, including games, and digital entertainment, including movies and music. Warez groups distribute pirated software, movies and music over the Internet, and compete with one another to be the first to release new, high quality pirated products, within an elaborate underground Internet society, known as the "warez scene." Due in part to the activities of warez groups, pirated versions of software applications, movies and music are available worldwide, electronically and on optical disc, sometimes even before they are made commercially available to the public.

2.   Warez groups are often structured, hierarchical organizations comprised of members in various countries who have specialized skills and roles in the piracy of digitized intellectual property. Some warez groups specialize in obtaining "pre-release" intellectual property for piracy, often from company or distribution insiders, or software testers, who have access to final versions of new products which have yet to be released to the public.

Other warez groups concentrate on "cracking" copyright protection systems by removing or otherwise circumventing copyright protection controls like encryption, serial numbers, tags, duplication controls, and/or security locks. Still other groups act as couriers, distributing pirated intellectual property over the Internet to warez sites worldwide.

3. Warez members typically store their pirated intellectual property on servers employing a protocol known as a file transfer protocol ("FTP") which allows other individuals to download pirated product from, and upload pirated product to, that server. Access to warez FTP servers, or sites, is nearly always password-protected, and many warez groups protect large FTP archive sites, containing tens of thousands of files of pirated software, movies and music, through a combination of sophisticated security measures.

4. Members of the warez scene frequently communicate with each other over the Internet using "real time" software applications and closed channels, such as "Internet Relay Chat" ("IRC"), as well as encryption to avoid detection by law enforcement. As a further security precaution, most warez members conceal their Internet identities by assuming aliases, and many disguise their Internet addresses, and thus their true locations, by routing Internet communications through another computer known as a "virtual host" or "bounce box" which is configured to appear falsely as the source of the communication.

5. The reasons why individuals become members of warez groups vary. Common to virtually all warez members, however, is the desire for personal financial gain through access to vast quantities of free software, movies and music available on warez FTP sites. A few of the larger warez groups also sell their pirated product for commercial gain. Other motives besides profit include the thrill and social comradery members obtain through clandestine participation in the illegal activity; and the reputation and fame that attends membership and participation in the "top" warez groups.

## COUNT ONE
(Conspiracy)

6. Paragraphs one through five of this Information are hereby realleged and incorporated as if fully set forth herein.

### I. Object of the Conspiracy

7. From in or before November 2002 through April 21, 2004, both dates being approximate and inclusive, in Mecklenburg County, in the Western District of North Carolina, and elsewhere, the defendant,

### SCOTT J. WALLS,

did knowingly and voluntarily combine, conspire, confederate, and agree with others willfully, and for purposes of private financial gain, to infringe a copyright by the reproduction and distribution, during a 180-day period, of at least ten (10) copies of one (1) or more copyrighted works which have a total retail value of more than $2,500, in violation of Title 18, United States Code, Section 2319(a), and (b)(1), and Title 17, United States Code, Section 506(a)(1).

### II. Defendant's Manner and Means within the Conspiracy

8. The ways, manner and means by which the defendant, SCOTT J. WALLS, sought to achieve the objects of this conspiracy included, but were not limited to, the following:

    a. It was a part of the conspiracy that the defendant, SCOTT J. WALLS, would be a member of and participate in a warez group and the warez scene.

    b. It was further a part of the conspiracy that the defendant, SCOTT J. WALLS, would test original software obtained from a "supplier" which was to be "cracked" and ultimately reproduced and distributed over the Internet to the warez scene.

    c. It was further a part of the conspiracy that the defendant, SCOTT J.

WALLS, would run a "bounce box" to provide security and anonymity to other warez group members.

  d. It was further a part of the conspiracy that the defendant, SCOTT J. WALLS, would host a movie Internet FTP storage site from which other warez members could download pirated movies and to which others could upload pirated movies.

  e. It was further a part of the conspiracy that the defendant, SCOTT J. WALLS, would upload hundreds of pirated, copyright-protected digital titles, consisting of software applications, movies and music, to other warez FTP sites for further distribution and download hundreds of such copyright-protected digital titles for further distribution and his own personal use.

### III. Overt Acts

9. In furtherance of the conspiracy, and to accomplish its unlawful objectives, the defendant, SCOTT J. WALLS, from November 9, 2002, through November 22, 2003, in the Western District of North Carolina and elsewhere, uploaded or caused to be uploaded tens of digital files, consisting of pirated, copyright-protected software applications, movies and music, to a warez FTP site and, from November 17, 2002, through February 1, 2004, in the Western District of North Carolina and elsewhere, downloaded or caused to be downloaded hundreds of such digital files from a warez FTP site, and each such upload and download constituted an overt act. Among these overt acts, to enumerate but a few, were the following:

  a. On June 27, 2003, the defendant, SCOTT J. WALLS, downloaded or caused to be downloaded from a warez FTP server, located in the Western District of North Carolina, a pirated copyright-protected digital title known as *The Hulk Xbox*.

  b. On September 6, 2003, the defendant, SCOTT J. WALLS, uploaded or caused to be uploaded to a warez FTP server, located in the Western District of North

Carolina, a pirated copyright-protected digital title known as *Homeimprovement 1.2.3 v2*.

    c.    On November 22, 2003, the defendant, SCOTT J. WALLS, uploaded or caused to be uploaded to a warez FTP server, located in the Western District of North Carolina, a pirated copyright-protected digital title known as *Cardiff Liquidoffice Form Designer v3*.

    d.    On January 10, 2004, the defendant, SCOTT J. WALLS, downloaded or caused to be downloaded from a warez FTP server, located in the Western District of North Carolina, a pirated copyright-protected digital title known as *Microsoft Windows XP Servicepack 1*.

    e.    On January 27, 2004, the defendant, SCOTT J. WALLS, downloaded or caused to be downloaded from a warez FTP server, located in the Western District of North Carolina, a pirated copyright-protected digital title known as *The Butterfly Effect*.

    f.    On February 1, 2004, the defendant, SCOTT J. WALLS, downloaded or caused to be downloaded from a warez FTP server, located in the Western District of

Case 3:05-cr-00289-GCM-DCK   Document 1   Filed 07/28/05   Page 5 of 6

North Carolina, a pirated copyright-protected digital title known as *Vmware Workstation v4.0.1 (Linux)*.

All in violation of Title 18, United States Code, Section 371.

GRETCHEN C. F. SHAPPERT
UNITED STATES ATTORNEY

*[signature]*

COREY F. ELLIS
ASSISTANT UNITED STATES ATTORNEY

CORBIN A. WEISS
TRIAL ATTORNEY
U.S. DEPARTMENT OF JUSTICE

The undersigned asserts, under oath, that there is probable cause to believe that the crimes alleged in the foregoing Bill of Information were committed by SCOTT J. WALLS.

*[signature]*

Corbin A. Weiss
Trial Attorney
U.S. Department of Justice